UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

AVATAR BUSINESS CONNECTION,
INC.,

               Plaintiff,

     v.

UNI-MARTS, INC.,

               Defendant.

HON. JEROME B. SIMANDLE

Civil Action
No. 04-1866 (JBS)

**OPINION**

**APPEARANCES:**

Peter M. Rhodes, Esq.
Donald F. Browne, Jr., Esq.
CAHILL, WILINSKI, RHODES & JOYCE
89 Haddon Avenue, Suite A
Haddonfield, New Jersey 080333
    Attorneys for Plaintiff

Adrienne C. Rogove, Esq.
Michael J. Conlan, Esq.
SAUL EWING LLP
750 College Road East, Ste. 100
Princeton, New Jersey 08540
    Attorneys for Defendant

**SIMANDLE,** District Judge:

This matter comes before the Court upon a motion by Plaintiff Avatar Business Connection, Inc. for leave to file an Amended Complaint. For the reasons discussed below, Plaintiff's motion will be granted in part and denied in part. The Court will allow Plaintiff to amend its Complaint consistent with the proposed Amended Complaint filed on October 17, 2005 [Docket Item No. 24] but only with respect to (1) amending the Complaint to

name Uni-Marts, LLC as the defendant and (2) to add a claim for breach of the covenant of good faith and fair dealing (Count IV of the proposed Amended Complaint).  Plaintiff is not granted leave to amend its Complaint to add claims of fraud or unjust enrichment/quantum meruit (Counts II and III, respectively, of the proposed Amended Complaint).

## I. **BACKGROUND**

The parties are familiar with the facts of the underlying dispute and the Court need not repeat them here.  A brief summary of the two brokerage agreements, however, is in order.  While pursuing a plan to divest 170 stores, Defendant Uni-Marts, Inc. engaged Plaintiff to serve as its business broker charged with marketing the business assets of 67 of Uni-Marts' stores. The agreement between Uni-Marts and Plaintiff was memorialized in a September 19, 2002 exclusive brokerage agreement (the "Expired Brokerage Agreement"). The Expired Brokerage Agreement contained a provision that is central to the dispute now before the Court. Specifically, because Uni-Marts was also exploring the possibility of selling the entire company (either through an asset sale, stock sale or other business combination), the parties negotiated (and the agreement contained) a so-called "wind-up" provision ("Section 3.3.").  Section 3.3. stated that, in the event Uni-Marts sells all of the assets of the company or undergoes another business combination resulting in a change of

control of equity ownership (e.g., a stock sale or merger) during the term of the Expired Brokerage Agreement or any renewal period, Uni-Marts will pay Plaintiff a flat fee of $2,500 for any unsold store listed in an exhibit to the agreement in lieu of a commission. The Expired Brokerage Agreement expired by its terms on March 19, 2003.

On March 26, 2003, Uni-Marts and Avatar entered into a second brokerage agreement (the "Second Brokerage Agreement"). The Second Brokerage Agreement, which also had a six month-term, expressly replaced and superseded the Expired Brokerage Agreement containing a merger clause stating that the agreement "contains the entire agreement and understanding between the parties with respect to the subject matter identified and referenced in this Agreement."  One major difference exists between the Expired Brokerage Agreement and the Second Brokerage Agreement that is relevant here. Specifically, the Second Brokerage Agreement did not contain a "windup" provision analogous to Section 3.3.

On October 13, 2005 at 8:05 p.m., literally on the eve of oral argument on the parties' cross-motions for summary judgement, Plaintiff filed a Motion to Amend/Correct its Complaint seeking to (a) add Uni-Marts, LLC as a defendant and (b) add causes of action for in quantum meruit, fraud and breach of the covenant of good faith and fair dealing. (See Amended Compl. ¶ 13-35.) The Court heard oral argument on the parties'

3

cross-motions on October 14, 2005 as scheduled and did not
address Plaintiff's Motion to Amend/Correct its Complaint.
Instead the Court (1) reserved judgment on the cross-motions, (2)
ordered Plaintiff to serve its proposed Amended Complaint and
brief in support of its Motion for Leave to Amend/Correct its
Complaint on Uni-Marts and (3) ordered Uni-Marts to file
opposition to Plaintiff's Motion for Leave to Amend/Correct by
November 3, 2005 and Plaintiff to file a reply, if any, by
November 14, 2005.  The parties complied with this Court's order
and the Court has reviewed all submissions received.[1]

## II.  **DISCUSSION**

Leave to amend pursuant to Rule 15(a) should be freely
granted. See Foman v. Davis, 371 U.S. 178 (1962); see also Adams
v. Gould, Inc., 739 F.2d 858, 864 (3d Cir. 1984), cert. denied,
469 U.S. 1122 (1985). Although liberally granted, the decision to
grant leave to amend a complaint rests within the sound
discretion of the trial court under Fed. R. Civ. P. 15(a). See
Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir.

---

[1] On December 29, 2005, this Court issued an opinion and
order (1) granting Uni-Marts' motion for summary judgment and (2)
denying Plaintiff's cross-motion for summary judgment upon
Plaintiff's breach of contract claim.  As such, this Court will
not address Count I (Breach of Contract, ¶ 5-12) of Plaintiff's
proposed Amended Complaint as the Court has already granted
summary judgment in favor of Uni-Marts as to this issue. Avatar
Business Connection, Inc. v. Uni-Marts, Inc., No. 04-1866, Slip.
Op. at 2; to reassert this same breach of contract claim would be
futile.

1983).  Although it may be unorthodox to present a motion to amend at this late stage, precedent makes clear that such a motion must be considered, and its timeliness is only one factor among many that the court is to consider under Rule 15(a).  See Arther v. Maersk, Inc., 434 F.3d 196, 203 (3d Cir. 2006)(noting that the Rule 15(a) standard "encompasses a broad range of equitable factors, including a party's delay in seeking leave to amend and any prejudice to the opposing party.")  The Court of Appeals has determined that it could be an abuse of discretion to refuse to entertain a motion to amend even after summary judgment is entered.  See Adams, 739 F.2d at 869; see also Newark Branch, NAACP v. Town of Harrison, 907 F.3d 1408, 1417 (3d Cir. 1990). This is especially true where no explicit deadline for filing motions to amend was set in the Scheduling Orders under Rule 16(b)(1), Fed. R. Civ. P., and the Final Pretrial Order has not yet been entered (an amendment to pleadings after the Rule 16(b)(1) deadline expires requires a showing of "good cause," see Rule 16(b)).  After entry of the Final Pretrial Order, an amendment to add an unstated claim would be permitted "only to prevent manifest injustice." Fed. R. Civ. P. 16(e).

Such a liberal amendment philosophy limits the district court's discretion to deny leave to amend. See Adams, 739 F.2d at 864. The district court may only deny leave to amend (A) "if a plaintiff's delay in seeking amendment is undue, motivated by bad

5

faith, or prejudicial" to the defendant or (B) if the amendment would be futile (i.e., the amendment fails to state a cause of action). Id.; see also Massarsky, 706 F.2d at 125.

### A. Whether Plaintiff's Delay in Seeking Amendment to its Complaint is Undue, Motivated by Bad Faith or Prejudicial to Uni-Marts.

In analyzing whether plaintiff's delay was deemed undue or motivated by bad faith, a court must focus on the actions of the plaintiff. See Adams, 739 F.2d at 869. In contrast, when determining whether Plaintiff's delay in seeking to amend was prejudicial, the court must focus on the impact of a plaintiff's action on a defendant. See id. As such, the Court will analyze these factors -- (1) undue delay/bad faith by Plaintiff and (2) prejudice to Uni-Marts -- separately. In the present case, however, in which plaintiff's timing does not exceed any limit upon motions to amend pleadings set by Court Order, and in which Defendant does not claim any undue delay or bad faith, the only issue is whether the allowance of the amendments sought would unduly prejudice Defendant.

Uni-Marts argues that it would be prejudiced if the Court allowed Plaintiff to amend the Complaint at this point in the litigation. (Def.'s Opp. Br. at 4-5.) Uni-Marts asserts no particular prejudice except that allowing Plaintiff's proposed amendment "would require much new discovery into the conduct...and intent of the principals of Uni-Marts and Raj

Vakharia." (Id. at 5.)  The Court views the crux of Uni-Marts'
arguments as objection to (1) the additional counsel fees
necessary to conduct further discovery, (2) the inconvenience to
Uni-Marts' principals in complying with additional discovery
requests (i.e., scheduling time for depositions), and (3) new
discovery serving to prolong this litigation.  The Third Circuit
has previously rejected arguments (1) and (3) as reasons for a
district court denying a plaintiff leave to amend its complaint.
See Adams, 739 F.2d at 868.

Uni-Marts cites Berger v. Edgewater Steel Co. for the
proposition that a district court would not abuse its discretion
by denying a motion to amend if the amendment "would inject new
issues into the case requiring extensive discovery and 'new and
substantially broader claims would put an unwarranted burden on
the trial court and be likely to result in prejudice to
[defendant.]'" (Def.'s Br. at 5 citing Berger v. Edgewater Steel
Co., 911 F.2d 911, 924 (3d Cir. 1990)).  In Berger, the Third
Circuit Court of Appeals upheld a district court's denial of a
plaintiff's motion for leave to amend their complaint to add a
discrimination claim.  Id.  Because the dispute centered on
changes an employer was making to its retirement plan under
ERISA, the court held that the addition of a discrimination claim
(which it deemed a substantially broader claim) "would require
'extensive discovery.'" Id.

7

This Court finds the facts in present situation distinguishable from those in Berger.  This Court does not anticipate that extensive additional discovery is necessary regarding Plaintiff's additional claims of in quantum meruit, fraud, and breach of covenant.  Because all new claims involve either (1) facts surrounding two brokerage agreements, (2) the intent of various parties with respect to the two brokerage agreements, or (3) the activities of Raj Vakharia and his dealings with the principals of Uni-Marts, the Court does not anticipate wide-ranging additional discovery.[2]  The Court finds that such a limited amount of additional discovery certainly was not what was contemplated by the Third Circuit in Berger when it denied plaintiff's leave to amend because plaintiff's new claims required "extensive discovery."  To do so would have been contrary to the liberal amendment philosophy embodied in Fed. R. Civ. P. 15(a) as adopted by the Third Circuit in Adams.

---

[2]  At present, the Court cannot think of who Plaintiff will seek to depose on these issues aside from the from the depositions of Raj Vakharia, Ara Kervandjian (principal of Uni-Marts, Inc.) and Braja Mahapatra (principal of Plaintiff).  In any event, the Court has discretion to condition the granting of a motion to add new claims by limiting the type, frequency and duration of reopened discovery pursuant to Rule 16(b)(1) and (3), Fed. R. Civ. P., as well as through the rule of proportionality in discovery, Rule 26(b)(2), Fed. R. Civ. P.  Also, the amending party is always required to supplement its pretrial disclosures where the new claims trigger the duty of supplementation under Rule 26(e)(1), Fed. R. Civ. P., where "in some material respect the information [previously] disclosed is incomplete or incorrect...."

**B.    Whether Plaintiff's Amendment Would be Futile**

Having determined that the proposed amendment is timely
presented and that Uni-Marts will not be unduly prejudiced by
allowing such an amendment, the only remaining issue is whether
allowing the amendment would nevertheless be futile because the
amended complaint would not withstand a motion to dismiss.  The
district court may properly deny leave to amend if a plaintiff's
amendment would be futile - meaning that the claims in the
amendment "would not withstand a motion to dismiss." Massarsky,
706 F.2d at 125; see also Medpointe Healthcare, Inc. v. Hi-Tech
Pharmacal Co., 380 F. Supp.2d 457, 462 (D.N.J. 2005).  In its
opposition brief, Uni-Marts argues that each of the new claims
set forth in its proposed Amended Complaint would not survive a
motion to dismiss.  As such, this Court will review each new
claim Plaintiff seeks to add in order to determine whether
allowing leave to amend to add each claim would be futile.  See
Gundlach v. Reinstein, 924 F. Supp. 684 (E.D. Pa. 1996), aff'd,
114 F.3d 1172 (3d Cir. 1997)(analyzing each claim in a proposed
amended complaint separately to determine if leave to amend to
add such claim would be futile).

**1.    Fraud (Count II of the Amended Complaint)**

Count II of the Amended Complaint alleges that, once the
interests of Uni-Marts and Vakharia were aligned (meaning after
Uni-Marts and Vakharia agreed to consummate the transaction at

9

issue in this case), Vakharia and representatives of Uni-Marts "decided to structure the transaction as a merger in order to defraud [Avatar] of its commission." (Amended Compl. ¶ 25.) Plaintiff argues that a claim of fraud arises under New Jersey law when "a representative of a party to a contract makes a misrepresentation of intent in execution of the contract by means of defrauding the other party of money otherwise owed." (Pl.'s Br. at 3 citing Gleason v. Norwest Mtg. Inc., 243 F.3d 130 (3d Cir. 2001)). Plaintiff states that when Uni-Marts Executive Vice President Ara Kervandjian (the draftsman of the Second Brokerage Agreement) purposefully removed Section 3.3. from the Second Brokerage Agreement, "Kervandjian knew Uni-Marts was actively trying to sell the entire company, and was in fact open to the possibility of a stock sale." (Id. at 4.)

Uni-Marts counters by arguing that Plaintiff would be unable to prevail on a fraud claim, and thus, granting Plaintiff leave to amend to add this claim would be futile. (Def.'s Opp. Br. at 8.) Under New Jersey law, legal fraud is "a material misrepresentation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment." Jewish Center for Sussex County v. Whale, 86 N.J. 619, 624 (1981). To prevail on a fraud claim, Plaintiff must prove, by a clear and convincing evidence standard, that Uni-

Marts (1) made a knowingly false and material representation of fact to Plaintiff, (2) with intent that Plaintiff rely on such a representation, and (3) that Plaintiff reasonably relied on the representation to its detriment.  See Gleason, 243 F.3d at 145. Uni-Marts argues that, even if all allegations in the proposed Amended Complaint are taken as true, a claim for fraud has not been made.  (Def.'s Opp. Br. at 8.)  First, Uni-Marts argues that no one from Uni-Marts made any representation to Plaintiff that, under the Second Brokerage Agreement, Plaintiff would receive a commission in the event of a stock sale or merger.  Uni-Marts points to the deposition testimony of Mahapatra in which Mahapatra stated that he knew he was not retained to sell the stock of Uni-Marts.  (See id. citing Mahapatra Depo. Tr. 104-105.)  Because Uni-Marts made no statement to Plaintiff about the Second Brokerage Agreement, Uni-Marts contends that Plaintiff cannot satisfy the first element of a fraud cause of action, namely that the defendant made a material misstatement of fact.

Second, Uni-Marts argues that Plaintiff cannot truthfully allege that Uni-Marts concealed the fact that the Second Brokerage Agreement did not contain Section 3.3. with the intent to defraud.  (Def.'s Opp. Br. at 9.)  This is because Mahapatra testified that he knew that Section 3.3. had been removed from the Second Brokerage Agreement and that he was pleased with this

11

fact.  (<u>See</u> <u>id</u>.)  Thus, there was no false representation on which Plaintiff relied.  (<u>See</u> <u>id</u>.)

The Court granting leave to amend to add a fraud claim would be futile as the claim would not survive a motion to dismiss under standards set by Fed. R. Civ. P. 12(b)(6).  Even accepting all reasonable inferences derived from the facts and all allegations in the proposed Amended Complaint in the light most favorable to the Plaintiff, the Court concludes that Plaintiff fails to state a cognizable claim for fraud.  Based on the evidence presented in Mahapatra's deposition regarding (a) his knowledge of the contents (or lack thereof) of the Second Brokerage Agreement and (b) his interpretation and reaction to the lack of Section 3.3. in the Second Brokerage Agreement, Plaintiff would be unable to prove by clear and convincing evidence either that (1) Plaintiff made a material and false representative to Plaintiff and, more importantly, (2) that Plaintiff detrimentally relied on the representation.

First, it is clear that Mahapatra knew that Section 3.3. was removed in the Second Brokerage Agreement.  He testified that he received a black-lined copy of the Second Brokerage Agreement (showing changes between the Expired Brokerage Agreement and the Second Brokerage Agreement) in his meeting with Kervandjian on March 26, 2003 and that the black-line version of the Second Brokerage Agreement showed changes from the Expired Brokerage

12

Agreement.  (Mahapatra Depo. Tr. at 88-89.) Second, it is also clear that Plaintiff would not be able to show that Plaintiff detrimentally relied on any misrepresentation as required to prove a claim of fraud.  Mahapatra testified that he thought that the absence of Section 3.3. in the Second Brokerage Agreement "was a good thing for us" and that he was "okay with the new agreement." (Mahapatra Depo. Tr. 88, 115.)  Mahapatra appears to have made a serious misinterpretation of the absence of Section 3.3. in the Second Brokerage Agreement.  Unfortunately for Plaintiff, such a unilateral misinterpretation does not amount to fraud.  Thus, this Court finds that Plaintiff's factual basis for its fraud claim will not stand up to scrutiny and Plaintiff cannot prove each element of the claim.  Thus, the Court will not grant Plaintiff leave to amend its Complaint to include a fraud claim (Count II) in its Amended Complaint as such an amendment would be futile.

### 2.   In Quantum Meruit (Count III of the Amended Complaint)

Count III of the Amended Complaint is for recovery based on the theory of unjust enrichment/quantum meruit.  (Amended Compl. ¶ 27-30.)  Specifically, Plaintiff claims that Uni-Marts (1) "received great benefit" as a result of the time and money expended by [Plaintiff] in searching for a buyer pursuant to the wishes of Uni-Marts, (2) that it would be unjust if Uni-Marts retained the benefit of the time and money Plaintiff expended in

searching for a buyer "pursuant to the wishes of Uni-Marts," and
(3) that Plaintiff is entitled to compensation from Uni-Marts
pursuant to the doctrines of in quantum meruit and unjust
enrichment.  (Id.)

Plaintiff argues that, under the doctrine of in quantum
meruit, (i) when a plaintiff partially performed a contract
whereby a benefit is conferred on a defendant, a quasi-contract
is created independent of the intentions of the parties and (ii)
when a party has, in good faith, fulfilled that contract, but not
in the manner agreed (and the other party accepted performance),
plaintiff may recover on the implied contract.  (Pl.'s Br. at 4.)
In addition, Plaintiff argues that a claim for unjust enrichment
exists when (i) one party receives a benefit and (ii) an
injustice would result if the party retained the benefit without
paying for it.  (See id. citing Rockaway v. Klockner & Klockner,
811 F. Supp. 1039, 1058 (D.N.J. 1993)).  Based on these two
elements, according to Plaintiff, Uni-Marts was unjustly enriched
by Plaintiff's efforts to find a buyer for Uni-Marts.  (See id.
at 4-5.)

Uni-Marts argues that Plaintiff's request for leave to amend
the Complaint to assert these claims should be denied because an
unambiguous and fully integrated brokerage agreement between the
parties precludes any recovery on quasi-contract grounds.
(Def.'s Opp. Br. at 13.)  Rather, it is well-established that

14

where a valid express contract exists, claims of quantum meruit
and unjust enrichment do not.  (See id. citing Suburban Transfer
Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 226-27 (3d
Cir. 1983)("Quasi-contract liability will not be imposed...if an
express contract exists concerning the identical subject
matter."))  Finally, Uni-Marts argues that Plaintiff had no
reason to expect remuneration from a merger transaction which it
did nothing to facilitate.  (Id. at 19-22.) On this point, Uni-
Marts emphasizes that Plaintiff's claim that it was an integral
part of the events that led to the merger which created Uni-
Marts, LLC is wholly unsupported by any evidence.[3]  (See id. at
21.)

     This Court must deny Plaintiff's motion for leave to amend
because Plaintiff's quantum meruit claim would be futile.  The
doctrine of quantum meruit enables a performing party to recover
the reasonable value of the services the party rendered in the
absence of a contract.  Weichert Co. Realtors v. Ryan, 128 N.J.
427, 437-39 (1992)(a real estate agent who was the "procuring
cause" of a sale was entitled to the reasonable value of his
services rendered under the theory of quantum meruit); see also
Conklin v. Kruger, 79 N.J.L. 326, 328 (Sup. Ct. 1910)("It is well
settled that where one performs services for another at his

_____

     [3]  Uni-Marts points to testimony of Plaintiff where
Plaintiff admits that he did not know the details of the Uni-
Marts merger transaction. (See Mahapatra Depo. Tr. at 138-39.)

request, but without any agreement or understanding as to wages or remuneration, the law implies a promise on the part of the party requesting the services to pay a just and reasonable compensation....") However, under New Jersey law, the doctrine of quantum meruit only applies if there is no contract between the parties that addresses the identical subject matter of the plaintiff's quantum meruit claim. See Power-Matics, Inc. v. Ligotti, 79 N.J. Super. 294 (App. Div. 1963); Iwanowa v. Ford Motor Co., 67 F. Supp.2d 424 (D.N.J. 1999). Indeed, the Court of Appeals has made it clear that a plaintiff may not bring a claim under a quasi-contract theory of liability (such as quantum meruit or unjust enrichment) when the plaintiff and defendant are parties to an express and valid agreement concerning the identical subject matter as plaintiff's claim. See Suburban Transfer Serv., Inc., 716 F.2d at 266-67.

Here, Count III of Plaintiff's Amended Complaint addresses the identical subject matter that is covered in the Second Brokerage Agreement (i.e., Plaintiff's duty to locate a buyer of certain of Uni-Marts' assets) and therefore, under the rule in Suburban Transfer Serv., Inc., Plaintiff is precluded from bringing either a quantum meruit or unjust enrichment claim related to these services. The subject matter of the Second Brokerage Agreement involves Plaintiff's duty to "secure a buyer" for certain of Uni-Marts' assets, (Second Brokerage Agreement ¶

16

1.1), while the proposed Amended Complaint seeks recovery under a theory of unjust enrichment/quantum meruit "as a result of the time and money expended by [Plaintiff] in search for a buyer pursuant to the wishes of Uni-Marts."  (Amended Comp. ¶ 28.) Because Plaintiff is attempting to impose liability based on a quasi-contract theory of liability relating to the exact subject matter contained in the Second Brokerage Agreement - an action that is clearly barred under the rule in Suburban Transfer Serv., Inc. - Plaintiff's claim under Count III would not survive a motion to dismiss.  Therefore, this Court must deny Plaintiff's motion for leave to amend to add a claim for unjust enrichment/quantum meruit as allowing an amendment would be futile.[4]

---

[4]  This Court is constrained by both the Third Circuit Court of Appeals' decision in Suburban Transfer Serv., Inc. (barring claims under the theory of quasi-contract where an express contract between the parties covers the identical subject matter of a claim) and the claims as pled in Plaintiff's propose Amended Complaint. (Amended Compl. ¶ 27-30.) Had Plaintiff raised a claim under the theory of unjust enrichment/quantum meruit for services that were outside of the parameters of the Second Brokerage Agreement this Court may have granted Plaintiff's motion for leave to amend to add a claim for quantum meruit/unjust enrichment. Specifically, Plaintiff could have pled that, in connection with the merger transaction, Plaintiff provided extra-contractual services to Uni-Marts such as negotiating the agreement or conducting due diligence relating to the transaction.  However, nowhere in the proposed Amended Complaint or in Plaintiff's brief in support of the motion were such claims made.  While proving such facts may have been difficult for (particularly in light of Plaintiff's admission that Plaintiff "was essentially shut out of all remaining negotiations between Vakharia and Uni-Marts," Pl.'s Brief in Opposition to Summary Judgment at 10), such a quantum meruit claim might present a

### 3. Breach of the Covenant of Good Faith and Fair Dealing (Count IV of the Amended Complaint)

In Count IV of the Amended Complaint, Plaintiff claims that Uni-Marts breached the covenant of good faith and fair dealing in its dealings with Plaintiff. (Amended Compl. ¶ 32-34.) In support of its motion for leave to amend to add Count IV, Plaintiff argues that Uni-Marts took certain actions with the intent "to destroy [Plaintiff's] right to receive its commission by (1) intentionally leaving out Section 3.3. in the Second Brokerage Agreement and then (2) structuring the deal as a merger in order to avoid paying Plaintiff a commission. (Pl.'s Br. at 5-6.) Plaintiff argues that, in doing these acts, Uni-Marts breached the implied covenant of good faith and fair dealing. (See id.) In response, Uni-Marts argues that (1) Uni-Marts' failure to pay a commission to Plaintiff does not constitute a breach of the covenant of good faith and fair dealing because the unambiguous terms of the Second Brokerage Agreement do not allow for payment of a commission to Plaintiff in the event of a stock sale and (2) Plaintiff's claim must fail as a matter of law because Plaintiff has no evidence suggesting that Uni-Marts and Vakharia conspired to structure the transaction as a merger to avoid paying a commission.

---

closer question than the proposed Amended Complaint does.

18

New Jersey law recognizes an implied covenant of good faith and fair dealing in every contract.  See Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 690 A.2d 575, 587 (N.J. 1997); see also Restatement (Second) of Contracts § 205 (1981). This implied covenant is "an independent duty and may be breached even where there is no breach of the contract's express terms." Black Horse Lane Assoc., L.P. v. Dow Chemical Corp., 228 F.3d 275, 288 (3d Cir. 2000), quoting Emerson Radio Corp. v. Orion Sales, Inc., 80 F. Supp. 2d 307, 311 (D.N.J. 2000)(internal quotations omitted); see also Bak-a-Lum Corp. v. Alcoa Bldg. Prods., Inc., 69 N.J. 123, 351 A.2d 349, 352 (N.J. 1976).  The implied covenant of good faith and fair dealing requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract" and a party to a contract breaches the covenant when it acts in bad faith or engages in some other form of inequitable conduct.  See Sons of Thunder, Inc., 690 A.2d at 587-89; see also Black Horse Lane Assoc., L.P., 228 F.3d at 288.  Other courts in this District have held that "a covenant of good faith and fair dealing [is implied in all contracts] in order to protect one party to a contract from the other party's bad faith misconduct or collusion with third parties where there is no breach of the express terms of the contract." Kapossy v. McGraw-Hill, Inc.,

19

921 F. Supp. 234, 248 (D.N.J. 1996); see also Restatement (Second) of Contracts § 205.[5]

Despite considerable discovery, Plaintiff has yet to bring to the Court's attention evidence that Uni-Marts acted in bad faith or colluded with Vakharia to structure the ultimate transaction between Green Valley Acquisition Co., LLC and Uni-Marts as a merger in order to avoid paying a commission to Plaintiff (under the Second Brokerage Agreement).  That said, however, since this Court is reviewing this application on a Fed. R. Civ. P. 12(b)(6) standard and cannot say that there is no set of facts which Plaintiff could prove that would entitle Plaintiff to recover under this theory, this Court cannot say that allowing leave to amend Plaintiff's complaint to add a claim for breach of the implied duty of good faith and fair dealing would be futile.

----

[5]   Section 205 of the Restatement (Second) of Contracts provides examples of the types of behavior that can give rise to a claim for breach of the implied duty of good faith and fair dealing in the context of one's performance under a contract. See id. § 205 cmt. d.  Such behaviors include:

> Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain...and interference with or failure to cooperate in the other party's performance.

Id. quoted in Black Horse Lane Assoc., L.P., 228 F.3d at 288-89.

Plaintiff should be afforded the opportunity to conduct discovery on this issue.  As such, Plaintiff's motion shall be granted in order to allow Plaintiff to amend the complaint in accordance with Count IV of its proposed Amended Complaint.

### III. <u>CONCLUSION</u>

For the reasons discussed above, this Court grants Plaintiff's Motion for Leave to Amend/Correct its Complaint in order to (1) amend the Complaint to name Uni-Marts LLC as the defendant and (2) to add a count for breach of the covenant of good faith and fair dealing consistent with Count IV of the proposed Amended Complaint.  Plaintiff's Motion for Leave to Amend/Correct its Complaint is denied with respect to Plaintiff adding a claim of fraud and unjust enrichment/<u>quantum</u> <u>meruit</u> (Counts II and III, respectively, of the proposed Amended Complaint) as amending the Complaint to add such claims, as pled in Plaintiff's proposed Amended Complaint, would be futile. The accompanying Order is entered.


**<u>June 30, 2006</u>**                          **<u>s/ Jerome B. Simandle</u>**
Date                                    JEROME B. SIMANDLE
                                        U.S. District Judge