UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

AVATAR BUSINESS CONNECTION,
INC.,

              Plaintiff,

    v.

UNI-MARTS, INC.,

              Defendant.

HON. JEROME B. SIMANDLE

Civil Action
No. 04-1866 (JBS)

**OPINION**

---

**APPEARANCES:**

John G. Takacs, Esq.
89 North Haddon Avenue
Haddonfield, New Jersey 080333
    Attorney for Plaintiff

Adrienne C. Rogove, Esq.
Michael J. Conlan, Esq.
Sean Patrick Lynch, Esq.
SAUL EWING LLP
750 College Road East, Ste. 100
Princeton, New Jersey 08540
    Attorneys for Defendant

**SIMANDLE**, District Judge:

This matter comes before the Court upon a second motion by Defendant Uni-Marts, Inc. ("Uni-Marts") for summary judgment. This motion comes after the completion of Court-ordered additional discovery following Plaintiff Avatar Business Connections, Inc.'s ("Plaintiff") motion for leave to amend its Complaint to add a claim of breach of the covenant of good faith and fair dealing against Defendant. For the reasons discussed below, Uni-Marts' motion will be granted.

I.    **BACKGROUND**

A.    **Background Facts**

The parties are familiar with the facts of the underlying dispute and the Court need not repeat them here.  A brief summary of the dealings between Plaintiff and Uni-Marts, however, is warranted.  While pursuing a plan to divest 170 stores, Uni-Marts engaged Plaintiff to serve as its business broker.  Plaintiff was charged with marketing the business assets of 67 of Uni-Marts' stores and would be paid a sales commission for each store sale he brokered.  The agreement between Uni-Marts and Plaintiff was memorialized in a September 19, 2002 exclusive brokerage agreement (the "Expired Brokerage Agreement").  The Expired Brokerage Agreement contained a "wind-up" provision stating that, in the event Uni-Marts sold all of the assets of the company or undergoes another business combination resulting in a change of control of equity ownership (e.g., a stock sale or merger) during the term of the Expired Brokerage Agreement, Uni-Marts would pay Plaintiff a flat fee of $2,500 for any unsold store listed in an exhibit to the agreement in lieu of a commission.[1]

The Expired Brokerage Agreement expired on March 19, 2003 and on March 26, 2003, Uni-Marts and Avatar entered into a second

---

[1]  According to Uni-Marts, Uni-Marts inserted this provision because, at the time it entered into the Expired Brokerage Agreement, Uni-Marts was also exploring the possibility of selling the entire company (either through an asset sale, stock sale or other business combination).

brokerage agreement (the "Second Brokerage Agreement").  This new agreement, which expressly replaced and superseded the Expired Brokerage Agreement, differed from the Expired Brokerage Agreement in one key way: the Second Brokerage Agreement did not contain a "wind-up" provision.  As in the Expired Brokerage Agreement, however, Plaintiff (1) was entitled to a commission if an "Asset" (as defined in the Second Brokerage Agreement) was purchased by a party procured by Plaintiff[2] and (2) would be paid its commission only at the closing of the sale of the Asset(s) and solely from the proceeds Defendant realized from such sale.

In 2002, Defendant set up an Ad Hoc Committee that, beginning in the summer of 2002 and continuing through early 2004, investigated many alternatives to sell the company outside of the efforts being made by Plaintiff.  Specifically, according to Defendant's Proxy Statement, the Ad Hoc Committee aggressively pursued a possible stock acquisition of the company and a "going-private" merger transaction.  Between 2002 and 2004, Defendant

---

[2] Specifically, Section 3.1 of the Second Brokerage Agreement stated that:

Broker shall receive, as full compensation for its services hereunder, an amount equal to six percent (6%) of the total gross sale price of Assets purchased by parties identified by Broker (the "Broker Fee"). Gross sale price does not include amounts paid by identified parties under any transaction for ongoing lease commitments, business arrangements and both underground petroleum and in-store merchandise inventories (the "Excluded Assets.")

had a number of ultimately unsuccessful suitors interested in acquiring either substantial assets of its business or its entire business. (Id.)  In June of 2003, one such suitor, Raj Vakharia, who was introduced to Uni-Marts by Plaintiff, negotiated with Uni-Marts for the purchase of 125 Uni-Marts stores, but ultimately terminated negotiations after it became clear that the parties could not reach an agreement as to the structure and timing of the deal. (Id.)

In December of 2003, during the term of the Second Brokerage Agreement, Mr. Vakharia again approached Uni-Marts' management about a potential deal, but this time to take Uni-Marts private through a merger involving a number of entities.  The proposal involved a limited liability company called Green Valley Acquisition Co., LLC. ("Green Valley") that would serve as an acquisition company. (Id. at 28.)  Green Valley in turn was owned by two limited liability companies: Tri-Color Holdings, LLC ("Tri-Color")(whose members were three individuals that were directors and executive officers of Defendant) and KOTA Holdings, LLC ("KOTA")(whose members were Raj Vakharia and Paul Levinsohn). After the establishment of Green Valley, Uni-Marts was merged with Green Valley and Green Valley emerged as the surviving company. (Id.)  The parties signed a merger agreement on January 26, 2004.

4

**B.**     **Procedural History**

On April 15, 2004, Plaintiff brought a breach of contract claim against Uni-Marts alleging that they breached the "broker agreements" and Plaintiff was owed a commission.  (Original Compl. ¶ 12.)  In August and September of 2005, the parties filed cross-motions for summary judgment.  The Court heard oral argument on the cross-motions and, on December 29, 2005, issued an opinion and order granting Uni-Marts' motion for summary judgment and denying Plaintiff's cross-motion for summary judgment upon Plaintiff's breach of contract claim.  See Avatar Bus. Connection, Inc. v. Uni-Marts, Inc., No. 04-1866, 2005 U.S. Dist. LEXIS 37506, *4 (D.N.J. Dec. 29, 2005)(the "December 2005 Opinion").

Literally on the eve of oral argument on the parties' cross-motions, Plaintiff filed a Motion to Amend/Correct its Complaint seeking to (a) add Uni-Marts, LLC as a defendant and (b) add causes of action for in quantum meruit, fraud and breach of the covenant of good faith and fair dealing.  (See Amended Compl. ¶ 13-35.)  On June 30, 2006, this Court issued an opinion and order allowing Plaintiff to amend its Complaint but only to (1) name Uni-Marts, LLC as the defendant and (2) add a claim for breach of the covenant of good faith and fair dealing (and not to add claims of fraud or unjust enrichment/quantum meruit).  See Avatar Bus. Connection, Inc. v. Uni-Marts, Inc., No. 04-1866, 2006 U.S.

Dist. LEXIS 44434, *1 (D.N.J. June 30, 2006)(the "June 2006 Opinion").  In granting Plaintiff leave to amend to add a claim of breach of covenant, the Court held:

> Despite considerable discovery, Plaintiff has yet to bring to the Court's attention evidence that Uni-Marts acted in bad faith or colluded with Vakharia to structure the ultimate transaction between Green Valley Acquisition Co., LLC and Uni-Marts as a merger in order to avoid paying a commission to Plaintiff (under the Second Brokerage Agreement). . . .  Plaintiff should be afforded the opportunity to conduct discovery on this issue.

Id. at *25.  The Court ordered Plaintiff to file "an appropriate Amended Complaint consistent with [the Court's opinion]" within fourteen days of the entry of the Order.

On July 19, 2006, Plaintiff filed its Amended Complaint containing Plaintiff's claim of breach of the implied covenant of good faith and fair dealing. [Docket Item No. 31].[3]  On July 24, 2006, U.S. Magistrate Judge Ann Marie Donio issued a scheduling

---

[3] Plaintiff's Amended Complaint filed on July 19, 2006, inexplicably, contained a claim for breach of contract in addition to a claim of breach of covenant.  (Amended Compl. ¶¶ 5-12) [Docket Item No. 31.]  The Amended Complaint contains this claim despite the fact that (1) the Court granted summary judgment in favor of Uni-Marts and dismissed this claim in its December 2005 Opinion and (2) the court granted Plaintiff's motion for leave to amend "only with respect to (1) amending the Complaint to name Uni-Marts, LLC as the defendant and (2) to add a claim for breach of the covenant of good faith and fair dealing" in the June 2006 Opinion.  Avatar Bus. Connections, Inc., 2006 U.S. Dist. LEXIS at *1.  Any confusion about whether Plaintiff's breach of contract claim was dismissed should have been put to rest in footnote 1 to the June 2006 Opinion which states that for Plaintiff "to reassert this same breach of contract claim would be futile."

6

order ordering that all additional factual discovery on the breach of covenant claim be concluded by September 29, 2006. [Docket Item No. 32.]  On October 30, 2006, Uni-Marts filed a second motion for summary judgment to which Plaintiff filed opposition on November 21, 2006.[4]  The Court has considered all submissions and decides this motion without oral argument pursuant to Rule 78, Fed. R. Civ. P.

### C.  **Facts Arising From Additional Discovery**

Pursuant to Judge Donio's order, additional discovery took place in August and September of 2006.  Among other permitted discovery, Plaintiff's counsel was permitted to redepose Ara Kervandjian, President of Uni-Marts. [Docket Item No. 35.]

Aside from Kervandjian's deposition being taken, it is difficult to discern what additional discovery Plaintiff conducted on the issue of whether Uni-Marts acted in bad faith or colluded with Vakaharia to structure the ultimate transaction as a merger to avoid paying a commission to Plaintiff.  Indeed, Plaintiff has failed to file a statement of material facts to

---

[4]  As mentioned in Plaintiff's counsel's cover letter accompanying his opposition to Uni-Mart's second motion for summary judgment, Plaintiff's opposition is untimely having been due on November 17, 2006 but having been filed on November 21, 2006.  Plaintiff failed to ask for the Court's permission to file the opposition late or to take advantage of L. Civ. R. 7.1(d)(5) in which a party opposing a dispositive motion can obtain an automatic extension by invoking this provision in a letter filed with the Clerk before the date on which opposition papers would otherwise be due.  However, in the interests of justice, the Court will consider Plaintiff's untimely filed opposition.

which there exists or does not exist a genuine issue as required
by L. Civ. R. 56.1.[5]  Not only has Plaintiff failed to provide
this statement required by Rule 56.1, his brief in support of his
opposition to summary judgment contains no statement of facts and
thus, it is entirely unclear which facts Plaintiff relies on in
its opposition to Uni-Marts' motion.[6]  The only new evidence the
Court can be certain arose during the additional discovery period
during July and August of 2006 was the Certification from Braja
Mahapatra, President of Avatar Business Connections, Inc.  In the
Certification, Mahapatra:

- Points out that Defendant avoided paying Plaintiff over
  three million dollars ($3,000,000) in commissions it
  would have paid "had the transaction at issue been
  completed in a forthright manner."  (Certification of
  Braja Mahapatra ¶ 2);

---

[5]  Local Civil Rule 56.1 provides that "on a motion for
summary judgment, each side shall furnish a statement which sets
forth material facts as to which there exists or does not exist a
genuine issue."  L. Civ. R. 56.1.

[6]  Both a party moving for summary judgment and one
resisting summary judgment are required to make such a filing as
all facts not addressed by the party opposing summary judgment in
their opposition brief may be deemed admitted.  See SEC v.
Chester Holdings, Ltd., 41 F. Supp. 2d 505, 516 n.4 (D.N.J.
1999).  One purpose of the Rule 56.1 statement by the party
opposing summary judgment is to draw the Court's attention to
precisely those material facts for which a genuine dispute exists
by stating the fact and citing to the record of admissible
evidence.  By neglecting this duty, Plaintiff's counsel has
obscured the factual basis of opposition.  This court will not
assume that such countervailing facts exist where Plaintiff cites
to none in the record.  The Court will consider, however, the
facts recited in Plaintiff's brief that are specifically cited to
the record of this case.

- Details the ultimately unsuccessful negotiations between Vakaharia and Uni-Marts to purchase 125 Uni-Marts stores in June and July of 2003. It is undisputed that negotiations were ultimately terminated because the parties could not agree on issues related to a penalty clause in the purchase contract. (Id. at ¶¶ 7-13). Mahapatra also detailed Uni-Marts' unsuccessful negotiations with Reliance Management, LLC. (Id. at ¶¶ 25-26.);

- States that, during meetings between Vakaharia and Kervandjian in August of 2003 "[i]t [was] clear to [Mahapatra] that . . . another way to acquire the assets of Uni-Marts was proposed," (id. at ¶ 28), that "Uni-Marts, engaged in a systematic effort to enter into a contract with the individual [Mahapatra] introduced to Uni-Marts, Mr. Vakaharia, so that they would not have to pay [Plaintiff] a commission," (id. at ¶ 29), and that the parties "mislead [him] and continued to put [him] off for several months while [they] negotiated with each other." (Id.)

- Details side deals Mahapatra arranged with Vakaharia to sell certain Uni-Marts stores to third parties once Vakaharia acquired the stores from Uni-Marts. (Id. ¶¶ 18-24.) Indeed, in admitting that he found buyers for 43 stores at $23 million, and another buyer for 19 stores at $14 million, he had assembled buyers for 62 Uni-Marts stores for $37 million, which was a better deal for the principal, Uni-Marts, than the Vakharia offer of $35 million for 155 stores. (Id. at ¶¶ 19-20.) Mahapatra presented these deals to Vakaharia, not to his principal, Uni-Marts. By withholding these offers from Uni-Marts, Plaintiff stood to earn a double commission of six percent on the Vakharia purchase and three percent on the 62-store side deal.[7]

---

[7] Defendant alleges that Avatar has engaged in unequitable conduct, such that Avatar's unclean hands deprive it of obtaining equitable relief in this closely related matter, citing Faustin v. Lewis, 85 N.J. 507, 511 (1981). It is of course true that Avatar could not engage in self-dealing that was detrimental to Uni-Marts, such as withholding the existence of better purchase offers, for to do so violates the duty of trust placed in the broker. See Secretary Aluminum Window Mfg. Corp. v. Lehman Assoc., Inc., 108 N.J. Super. 137, 148 (App. Div. 1970). The issue need not be adjudicated here since other dispositive

II.   <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[8]  Fed. R. Civ. P. 56(c).  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999) (<u>quoting</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[9]  <u>Liberty Lobby</u>, 477 U.S.

_____

reasons militate against Plaintiff's claim of breach of covenant of good faith and fair dealing.

[8] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  <u>See</u> <u>id</u>.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  <u>See</u> <u>id</u>.

[9] The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Country Floors v. Gepner</u>, 930 F.2d 1056, 1061-63 (3d Cir. 1991).

at 250; Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

III. **DISCUSSION**

Under New Jersey law, every contract contains an implied covenant of good faith and fair dealing.  See Wade v. Kessler Inst., 172 N.J. 327, 340 (2002) (citing Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001); Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 690 A.2d 575, 587 (N.J. 1997).  This implied covenant is "an independent duty and may be breached even where there is no breach of the contract's express terms."  Black Horse Lane Assoc., L.P. v. Dow Chemical Corp., 228 F.3d 275, 288 (3d Cir. 2000), (quoting Emerson Radio Corp. v. Orion Sales, Inc., 80 F. Supp. 2d 307, 311 (D.N.J. 2000))(internal quotations omitted); see also Bak-a-Lum Corp. v. Alcoa Bldg. Prods., Inc., 69 N.J. 123, 351 A.2d 349, 352 (1976).  Under this covenant, "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  See Sons of Thunder, Inc., 690 A.2d at 587-89; see also Black Horse Lane Assoc., L.P., 228 F.3d at 288.  To succeed on a claim of breach of this covenant, a plaintiff must show evidence of bad faith, collusion or ill motive.  Wade, 172 N.J. at 341 (quoting Wilson, 168 N.J. at 251); Seidenberg v. Summit Bank, 348 N.J. Super. 243, 261 (App. Div. 2002); Kapossy v. McGraw-Hill, Inc., 921 F. Supp. 234, 248 (D.N.J. 1996).

11

In its June 2006 Opinion, this Court reopened discovery in
this matter to provide Plaintiff an opportunity to seek discovery
on the issue of whether Uni-Marts acted in bad faith or colluded
with Vakaharia to structure the ultimate transaction between
Green Valley and Uni-Marts as a merger in order to avoid paying a
commission to Plaintiff.  See  Avatar Bus. Connection, Inc., 2006
U.S. Dist. LEXIS *25.  The issue here then is whether there is
sufficient evidence from which a reasonable jury could conclude
that Uni-Marts showed bad faith, collusion or ill motive for the
purpose of denying Plaintiff a sales commission and thus breached
the implied duty of good faith and fair dealing during the
negotiations with Green Valley.  Here, the Court finds that there
is not and that Uni-Marts is entitled to summary judgment on
Plaintiff's breach of covenant claim.

     After the Court's June 2006 Opinion, Plaintiff had numerous
opportunities to provide a factual basis for its breach of
covenant claim.  However, Plaintiff failed to provide such
evidence (and, if the affidavit of Uni-Marts' counsel is to be
believed, may have failed even to participate in the Court-
ordered additional discovery in a meaningful way as Plaintiff
failed to produce documents requested by Uni-Marts and answer a
second set of interrogatories served by Uni-Marts).  (Affidavit
of Michael J. Conlan, Esq. ¶¶ 3-5.)  Indeed, Plaintiff has
submitted as newly discovered evidence only the certification of

Braja Mahapatra that contains his speculation that Vakaharia and
Uni-Marts structured the ultimate transaction as a merger in
order to avoid Uni-Marts' obligation to pay him a sales
commission.  (Mahapatra Cert. ¶¶ 28-29.)

     This Court cannot agree with Plaintiff that the evidence
presented in Plaintiff's opposition to Uni-Marts' motion (i.e.,
Mahapatra's conjectural statements) supports the existence of a
genuine issue of material fact on the issue of whether Vakaharia
and Uni-Marts colluded or acted in bad faith to avoid paying the
commission.  Plaintiff's position rests exclusively on
Mahapatra's assumptions about the reasons why the transaction was
ultimately structured as a merger (rather than a sale of assets)
and his speculation about what took place at a meeting -- that he
did not attend -- when the deal's ultimate structure was
finalized.  A party's subjective interpretation of events or
speculation as to the reasons for events is insufficient to
create a genuine issue of material fact.  See Black Horse Lane,
228 F.3d at 289.  Rather than relying on Mahapatra's assumptions
and conjecture regarding the motives for structuring the
transaction as a merger, Plaintiff could have sought to depose
Vakaharia, Kervandjian or the individuals who were involved in
the decision to structure the transaction as a merger to obtain
facts.  Plaintiff could have also pointed the Court to documents
where the parties discussed the reasons for ultimately

structuring the transaction as a merger rather than another type of business combination.  This however, was not done.[10] Consequently, Plaintiff has failed to point to evidence from which a reasonable jury could find in its favor and the Court finds no genuine issue of material fact on whether Uni-Marts breached its duty of good faith and fair dealing and grants summary judgment in favor of Uni-Marts.

IV.   **CONCLUSION**

For the reasons discussed above, this Court grants the motion of Defendant Uni-Marts, Inc. for summary judgment.  Uni-Marts has successfully demonstrated that no genuine issue of material fact exists as to the issue of Plaintiff's claim of breach of the covenant of good faith and fair dealing and that Uni-Marts is entitled to judgment as a matter of law.

The accompanying Order is entered.


**May 30, 2007**                              **s/ Jerome B. Simandle**
Date                                          JEROME B. SIMANDLE
                                              U.S. District Judge

---

[10]   In fact, evidence presented by Uni-Marts in its first motion, in the form of testimony from Kervandjian, suggests that Uni-Marts contemplated structuring the deal as a merger long ago. Specifically, Uni-Marts eliminated the "wind-up" provision from the Second Brokerage Agreement specifically to avoid an obligation to pay a commission to Plaintiff in the event of a change in the control of Uni-Mart's equity interest.